FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

12 MAR -7  PM 3: 31

CLERK U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

JAVIER LUIS

      Plaintiff

Case No. 8:12-CV-500-T-33AEP

v.

JOSEPH ZANG, CARLA BERGMANN
JOE ZANG CUSTOM BUILDERS,
ZANG GENERAL CONTRACTORS, INC
MARY JILL DONOVAN, MICHAEL MCCAFERTY
AND DONOVAN LAW

      Defendants

_____/

**COMPLAINT, DEMAND FOR JURY TRIAL AND REQUEST FOR**

**INJUCTIVE RELIEF**

Javier Luis ("Plaintiff") hereby commences an action for a vast number of violations of

state and federal law committed against him by the defendants.

**I.    SUMMARY OF THE ACTION**

This is an action for monetary relief arising from violations of 18 U.S.C.A. §2510 et sec.



1

("Wiretap Act"),  Florida's Security of Communications Act (SOCA)  and  Ohio's O.R.C.

§ 2933.52, as well as injunctive relief from futher illegal use of illegally obtained

communications.   Plaintiff also asserts violations of Invasion of Privacy, and Conspiracy

to Commit Invasion of Privacy.

## II.    PARTIES

1.     Plaintiff JAVIER LUIS ("Plaintiff") is a resident of Tampa,
Florida.

2.      Defendant JOE ZANG ("JOE ZANG") is a  resident of Cincinnati,
Hamilton County, Ohio .

3.     Defendant CARLA BERGMANN  ("Carla Bergmann") is an
Employee of, and with ownership interest in Joseph Zang
Custom Builders and Zang General Contractors.  At all times
relevant to this action, Carla Bergmann was  employed with Joseph
Zang Custom Builders and Zang General Contractors.

4.     Defendant JOSEPH ZANG CUSTOM BUILDERS
( "Joseph Zang Builders") is a business operating under the laws
of Ohio, with its principal place of business in Cincinnati,
Hamilton County, Ohio.  On information and belief, JOE ZANG
is a managing member with ownership interest in the
company.

5.     Defendant ZANG GENERAL CONTRACTORS, INC. ("Zang

2

Contractors") is a business operating under the laws of Ohio, with

its principal place of business in Cincinnati, Hamilton County,

Ohio.  On information and belief, JOE ZANG is a managing

member with ownership interest in    the company.

6.     Defendant MARY JILL DONOVAN ( "MJ Donovan")is an

attorney licensed to practice law in Ohio and, on

information and belief, is a resident of Cincinnati, Hamilton

County, Ohio.  At all times relevant to this action, MJ Donovan

was employed as an attorney with, and was a principal of

DONOVAN LAW.

7.     Defendant MICHAEL MCCAFFERTY  ( "McCafferty") is an

attorney licensed to practice law in Ohio and, on information

and belief, is a resident of Cincinnati, Hamilton County, Ohio.

At all times relevant to this action, McCafferty was  employed as

an attorney with, and was a principal of DONOVAN LAW.

8.     Defendant DONOVAN LAW ("Donovan Law")

is a law practice operating under the laws of the state of Ohio

with its principal place of business in Cincinnati, Hamilton

County, Ohio.  On information and belief, MJ Donovan and

McCartney are and were managing members of Donovan Law at

all times relevant to this action.

3

### III.   JURISDICTION AND VENUE

9.    Jurisdiction is proper over this civil action under 28 U.S.C §1331

as Plaintiff alleges violation of federal law, namely the Federal

"Wiretap Act" as amended by the Electronic Communications

Privacy Act, 18 U.S.C. § 2510 et seq. The Court has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C

1332, and 28 U.S.C. § 1367(a) and Plaintiff invokes the pendant

jurisdiction of this Court to hear and decide claims arising out of

state law because those claims are related to Plaintiff's federal

claims, are inextricably entwined and arise out of a common

nucleus of related facts. Plaintiff's state law claims are related to

Plaintiff's federal law claims such that those claims form part of

the same case of controversy under Article III of the United States

Constitution.

10.   Venue is proper under 28 U.S.C. §1391(b)(2), as all the illegally

intercepted communications giving rise to Plaintiff's claims

originated in Plaintiff's home, which is located in the Middle

District of Florida.

### IV.   GENERAL ALLEGATIONS

11.   Plaintiff lives in Tampa, Florida.

12.   In December of 2008 Plaintiff met CATHERINE ZANG (CATHY

4

ZANG) in a chatroom on the internet. At the time Plaintiff believed that CATHY ZANG had been newly separated from her husband JOE ZANG. Plaintiff was only later informed that, due to financial reasons, the separation was a type of "live-in separation."

13.  While counseling CATHY ZANG concerning acute post traumatic stress  issues relating to having lived in a controlling and emotionally abusive environment, Plaintiff commenced to have daily communications with her from his home in Tampa, Florida.

14.  Plaintiff has never met CATHY ZANG  in person and his only communications with her have been on the internet and telephone.

15.  At a time unknown to Plaintiff or CATHY ZANG, defendants JOE ZANG and Carla Bergmann secretly wired the marital home, including but not limited to the living room, computer area, dining area and kitchen with computer surveillance, audio and video equipment and secretly installed software in the family computer. Activity, computer communication transmissions,   meetings and conversations were intercepted and audio and video recordings were made from an unknown date and involved parties not limited to the Plaintiff named in this action. None of the Defendants were party to the conversations, transmissions, meetings or activities and none of the recorded parties  had

5

knowledge of or consented to be recorded or their

communications be intercepted.

16. JOE ZANG and Carla Bergmann, through ZANG

CONTRACTORS and ZANG BUILDERS purchased the software

and surveillance equipment and used company tools and

equipment to secretly install, monitor and intercept

communications between or CATHY ZANG and Plaintiff

(without Plaintiff's or CATHY ZANG's participation).

17. CATHY ZANG first noticed that such recordings may have

existed on or about December 18, 2009 at the temporary orders

hearing. The legality, specific dates and/or times and the way that

such recordings were created were still unknown to Plaintiff.

18. On or about a time between December 25, 2009 and January 1,

2010 CATHY ZANG observed what appeared to be a dvd player

in the attached garage on the shelf of the wall parallel to the

marital home's living room.

19. Further investigation by CATHY ZANG revealed that surveillance

equipment was secretly installed in the living room wall outlets

and set up for recording in the garage.

20. On or about a time between December 25, 2009 and January 1,

2010 CATHY ZANG obtained a dvr, a video camera from a wall

outlet and a microphone from its installation locations in the

attached garage on the shelf of the wall parallel to the marital

home's living room and installed in the living room.

21.   At a time uncertain but upon information and belief in 2011, parts

of the hard drive of the dvr was copied and revealed that secret

recordings were created and various people were recorded during

private activities, computer transmissions, meetings and oral

conversations. Presumably some of Plaintiff's oral

communications are among the multitude of illegally intercepted

conversations JOE ZANG still has in his possession, however

not all of the expansive hard drive could be examined before

CATHY ZANG was ordered to return it to JOE ZANG. Armed

with his JOE ZANGS confessions at his deposition, Plaintiff

repeated requests for a a criminal investigation went ignored by

IC3. However Plaintiff would still request that that the full

contents of the DVR be examined forensically, at JOE ZANG'S

expense, in order to find a larger portion of JOE ZANG'S illegal

interceptions of wire, oral and video communications.

22.   CATHY ZANG turned over the dvr and other materials to the

Green Township Police Department for criminal prosecution of

JOE ZANG.   Not surprisingly, Green Township detective bureau,

with family ties to MJ Donovan, declined to file criminal charges,

wrongly suggesting that there was a "nanny cam exception" to the

Ohio Statute.

23.   JOE ZANG and Carla Bergmann, by and through ZANG
      BUILDERS and ZANG CONTRACTORS intercepted, reviewed
      and created permanent recordings of various modes of legally
      protected communications without the knowledge or
      consent of the Plaintiff constituting: and invasion of
      Plaintiff's privacy, including trespass into the Plaintiff's
      seclusion, and public disclosure of private facts; a violation of
      the federal Wiretap Act, the Ohio Revised Code 2933.52, and
      Florida's SOCA.

24.   JOE ZANG and Carla Bergmann knew by placing the recording
      devices into the computer, walls and ceilings of the marital home
      it would intercept and record conversations and actions to
      which  they would not otherwise be privy and that possession of
      said recordings would create an advantage in the issues
      regarding JOE ZANG and CATHY ZANG's divorce proceedings.

25.   On information and belief, and after several months of recording,
      JOE ZANG brought the recordings to the attention of MJ Donovan
      in an effort to present evidence in the aforementioned divorce and
      custody case.  On information and belief, the recordings were
      presented to MJ Donovan in a viewable format.  MJ Donovan used
      specific information in said recordings on or about December 18,

2009 in conversations between MJ Donovan and CATHY ZANG's

counsel, and overheard by CATHY ZANG.  As a result of the

threatened use, CATHY ZANG agreed to every single one of the

coerced demands made by JOE ZANG's counsel, MJ Donovan.

CATHY ZANGS attorney then abruptly left the case.

25.   It was later learned that JOE ZANG and CARLA BERGMAN had

also GPS'd CATHERINE'S car and had "Skyhook"software

monitor and record her every move 24 hours a day for an unknown

period of time. The actual period has been permanently stored on

Skyhook's servers.

26.   Discovery requests of all recordings (video, computerized and/or a

audio) was demanded of JOE ZANG and MJ Donovan without

response.

27.   Sometime after her preliminary court hearing in December 2009,

Plaintiff was informed by CATHY ZANG that JOE ZANG  and his

attorney, co-defendant MJ Donovan, had shown up to the

courthouse with a box of various recorded media, including

supposed audio and video recordings of encounters between

CATHY ZANG and various individuals, including Plaintiff.

28.   CATHY ZANG was not shown the contents of the box.

29.   Plaintiff did not know the content of the box, nor did CATHY

ZANG. Plaintiff did not know if his telephone home conversations had been recorded or his electronic communications intercepted.

30.   Plaintiff later learned from CATHY ZANG that JOE ZANG had indicated to her that he may have also intercepted her Emails and private Instant Messages between her and numerous individuals, Plaintiff among them.  Although JOE ZANG did not admit to interceptions of oral communications between Plaintiff and CATHY ZANG,  Plaintiff believes his oral communications were also intercepted in further violation of state and federal wiretapping laws.

31.   When repeatedly demanded in court to show discovery, JOE ZANG and  MJ Donovan simply ignored the requests or continued to stall the motions. Any of the  contents of the box remained unknown to CATHY ZANG for more than three months.

32.   Plaintiff then requested proof from CATHY ZANG of any of the supposed intercepts which JOE ZANG and MJ Donovan had used on the  courthouse steps to intimate her attorney.  CATHY ZANG could not comply as her repeated requests for discovery were being ignored or refused by JOE ZANG AND MJ Donovan.

33.   In defiance of a court order of discovery within 30 days, JOE

10

ZANG AND MJ Donovan continued their stall tactics, and did not produce the requested documentation to CATHY ZANG. Without the production of the discovery evidence, Plaintiff could not have known nor could accurately speculate as to the true nature of the contents of the box.

34.    It was not until Spring or Summer of 2010 that CATHERINE ZANG'S attorney was finally in receipt of some of the evidence demanded of them during discovery that had been ordered by the judge back in December of 2009.  It was then that JOE ZANG and MJ Donovan sent CATHY ZANG'S new attorney a sample of the communications that JOE ZANG had illegally intercepted.

35.    In the summer of 2010 CATHY ZANG then mailed to Plaintiff a small sample given to her by her attorney of some of the electronic communications had been intercepted by JOE ZANG. Plaintiff could then see that some of his communications seemed genuine, although Plaintiff denies that they are all genuine or have not been altered in some way. was also given a copy of JOE ZANG's deposition in which JOE ZANG claimed to have only used the illegal spyware for a period of a month or two in late summer of 2009.

36.    Sometime after the deposition, presumably by a clerical error

by someone in MJ DONVAN'S law office, CATHY ZANG'S

attorney was forwarded a more complete set of illegal electronic

intercepts her office had at its disposal, but had counseled JOE

ZANG to claim did not exist. The actual extent of his spyware use

was permanently recorded on Web Watchers servers.

37.     To Plaintiff's and CATHY ZANG'S surprise, these intercepts

clearly indicated that JOSEPH ZANG'S illegal computer snooping

dated back much further than the period of time to which he

had testified to have used the spyware. Upon inspecting the

unexpected cache of undeclared evidence, Plaintiff realized that

some of these  intercepted communications dated back to the

beginning of 2009, not the summer of 2009 as JOE ZANG had

testified to under oath at  the deposition.

38.     Given such set of circumstances, Plaintiff alleges JOE ZANG and

MJ Donovan, fully aware of potential daily financial penalties

imposed by the The Electronic Communications Privacy Act of

1986 ("ECPA"), intentionally set about to defraud the court in

JOE ZANG'S deposition in order to minimize any anticipated civil

or criminal liability.  Plaintiff alleges that MJ Donovan and

DONOVAN LAW purposefully counseled JOE ZANG to perjure

himself at the deposition  as part of a long term strategy aimed at

minimizing his financial exposure in any potential future civil or

criminal action for the illegal intercepts that MJ Donovan,

McCafferty, and DONOVAN LAW knew or should have known

were illegal and carried large civil and criminal fines. This

unscrupulous legal tact was clearly designed to limit JOE ZANG'S

potential civil liability to approximately 45 days of illegal spyware

use instead of more than 9 months (270 days) of illegally

intercepted electronic communications.

39.    Plaintiff alleges that MJ Donovan , McCafferty and DONOVAN

LAW, in breach of all ethical legal practices in Ohio, had advised

JOSEPG ZANG to withhold some of his evidence in order to to

hedge their bets in case JOE ZANG was later subject to civil

penalties provided for in Florida's SOCA,  section 2520

2(b) of ECPA, and the O.R.C. that provides up to $100 per

day of having used the illegal methods of intercept or $10,000,

whichever is greater. By perjuring himself JOE ZANG  was

attempting to reduce the amount of days to which he could

possibly later be exposed to civil and criminal liability.

40.    Plaintiff alleges JOE ZANG and his attorney MJ Donovan using a

calculated, illegal and unethical legal strategy, set about to

maximize impact of such recordings , using Plaintiff's private

13

conversations as a battering ram against CATHY ZANG , in order
to intimidate, bully and coerce her to drop any attempt at
defending her case, and give in to his demands. while minimizing
any potential fines if such intercepts were later the basis of a civil
action, having run afoul of state and federal laws.

41.  This complaint alleges JOE ZANG and MJ Donovan violated the
federal wiretap law and Florida's SOCA law when electronic
communications originating from Plaintiff's computer located in
Florida, were intercepted in transmission using Web Watcher, an
automatic routing software JOE ZANG and Carla Bergmann had
installed on the home computer in Ohio. Internet messages in
particular , can only be intercepted "in transmission," as they are
not stored on the home computer in any way. Web Watcher bills
itself as " *the only computer monitoring software that lets you*
*monitor as many devices as you want with one interface. Web*
*Watcher records all PC activity including emails, IMs, websites*
*visited, web searches, Facebook/MySpace activity, **and anything***
***typed in real time....**Web Watcher will also take screenshots of*
*selected activity with the ability to infect other accounts that*
*connect to the infected computer.*" Plaintiff believes his own
computer may have been infected by JOE ZANG and Carla

14

Bergmann's illegal hacking and spyware use. All such spyware use was permanently recorded on Web Watchers servers and Plaintiff requests this Court issue a subpoena for access to the true extent of JOE ZANG and Carla Bergmann's intensive surveillance and computer hacking campaign against CATHY ZANG and Plaintiff.

42. Florida's SOCA and Ohio's Revisited Code allow for similar civil penalties and remedies provided for in the previously discussed ECPA statute. Plaintiff asserts that, in an attempt to avoid a daily fine, they purposefully and strategically omitted the true start date of his illegal spyware use. Proof of the start date of his spyware was permanently recorded on the Web Watcher software maker's servers.

43. Plaintiff further alleges MJ Donovan, McCafferty and DONOVAN LAW were in breach of ethical practices set for practicing attorneys in the state of Ohio, as she used the power of her title as a weapon for JOE ZANG against CATHY ZANG, and that her unethical behavior in this case has irreversibly damaged both himself, CATHY ZANG, and even their own legally jejune client JOE ZANG whose knowledge of the law in this arena was obviously limited and not expected to be held to the standards of a practicing attorney and her partner. Indeed her unethical

15

malpractice simply exposed him to various lawsuits, and yielded nothing he could legally use in his contentious divorce versus CATHY ZANG, something a firt year law student would have known by merely a quick glance at ruling federal and state laws.

44.   Plaintiff knows for a fact that JOE ZANG has used the illegal intercepts in an ongoing process of defamation of character aimed at CATHY ZANG but also by implications, Plaintiff, by showing the intercepts to third parties in an attempt to slander Plaintiff's and CATHY ZANG'S reputation in community.

45.   Plaintiff is aware of more than two incidents where JOE ZANG has approached family members of CATHY ZANG in order to disgrace her and Plaintiff, and defame their character.

46.   Plaintiff is aware of at least one incident where Joe Zang has actually shown his electronic communications to a third party who can testify under oath that JOE ZANG showed him intercepted emails and conversations between Plaintiff and CATHY ZANG , some of them most probably altered by JOE ZANG , to one of CATHY ZANG'S own sons, ZACH, in a vicious, brutal and ongoing campaign of emotional abuse, terror, control, defamation of character, stalking, and most insidiously of all; parental alienation.

16

47.   A motion in limine was filed in the divorce action by CATHY

ZANG, whereby the recordings that were threatened to be used

were excluded from proposed evidence and deemed "illegal".

48.   These recordings, some of which seem legitimate, but

others seemed to have been altered for greater effect,

remain in the custody and control of the Defendants.

49.   During the lengthy process of the divorce case, Defendant

McCafferty appeared before the court handling the divorce

and made specific statements to the Court referencing

the contents of communications intercepted by JOE

ZANG between Plaintiff and CATHY ZANG .  McCafferty is a

principal member of Donovan Law and made an appearance in the

Zang divorce  case.

50.   Also during the divorce upon information and belief to be

between August 2010 and September 2011, MJ Donovan

attempted to allow the divorce case's appointed Guardian

ad Litem review the already deemed "illegal" recordings,

some of which undoubtedly included illegal intercepts of

Plaintiff,  in another attempt to gain advantage in the

divorce case, specifically for advantage of custody,

visitation and child support issues.

51. Defendants MJ Donovan, McCafferty and Donovan Law repeatedly used known evidence of violations of privacy, of the Wiretap Act , Florida's SOCA, and of Ohio's Interception of Wire, Oral or electronic communications Statute in furtherance of the firm's client, JOE ZANG's desire to harm Plaintiff's and CATHY ZANG's character and position in the divorce case as well as the value of her presumed witnesses.

## V. COUNTS AGAINT DEFENDANTS

### COUNT I

FOR VIOLATIONS OF 18 U.S.C.A. §2510 ET SEQ. ("WIRETAP ACT")

52. Plaintiff restates and re-alleges section IV, numbers 1-51.

53. Defendants, and each of them, engaged in one or more of the following acts in violation of federal law:

(a) Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept oral communication;

(b) Defendants intentionally disclosed, or endeavored to disclose, to other persons the contents of oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the

18

above-referenced law; and/or

(c) Defendants intentionally used, or endeavored to use, the contents of oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the above referenced law.

54. As a result of Defendants' conduct Plaintiff is entitled to damages and other relief against each defendant as set forth in 18 U.S.C.A. § 2520, including but not limited to statutory damages of Ten Thousand Dollars ($10,000.00), punitive damages and reasonable attorney fees and other litigation costs reasonably incurred.

## COUNT II

## INVASION OF PRIVACY AND CONSPIRACY TO COMMIT INVASION OF PRIVACY

55. Plaintiff restates and re-alleges  section IV, numbers 1-54.

56. Plaintiff had an objectively reasonable expectation of privacy in the conversations and electronic communications that took place between himself and CATHY ZANG .  The conversations and communications were private, and Plaintiff had a right to keep the content of such conversations private.  In addition, the Defendants

19

disclosed private and potentially embarrassing facts to

the public that were of no legitimate concern to the public.

57.     Defendants, and each of them, combined to accomplish by

their concerted actions an intrusion upon Plaintiff in his

place of seclusion by their conduct as described herein.

58.     The intrusion upon the Plaintiff as described herein would

be highly offensive to a reasonable person.

## COUNT III

## VIOLATIONS OF FLORIDA'S SECURITY OF

## COMMUNICATIONS ACT (SOCA)

59.     Plaintiff restates and re-alleges section IV, numbers 1-58.

60.     Defendants' conduct violated SOCA § 934.03

61.     As a result of Defendants' conduct Plaintiff is entitled to

damages and other relief against each Defendant as set

forth in SOCA §934.10 including;

(a)     Preliminary or equitable or declaratory relief as

may be appropriate;

(b)     Actual damages, but not less than liquidated

damages computed at the rate of $100 a day for

each day of violation or $1,000, whichever is higher;

(c)     Punitive damages; and

(d)     A reasonable attorney's fee and other litigation costs reasonably incurred.

## COUNT IV

## VIOLATION OF OHIO REVISED CODE 2933.52

62.     Plaintiff restates and re-alleges  section IV, numbers 1-61.

63.     Defendants' conduct violated O.R.C. § 2933.52.

63.     As a result of Defendants' conduct, Plaintiff is entitled to damages and other relief against each Defendant as set forth in O.R.C. 2933.65, including Ten Thousand Dollars ($10,000.00) and reasonable attorney fees and other litigation costs reasonably incurred.


WHEREFORE, Plaintiffs JAVIER LUIS requests that this Court:

 Award punitive damages against the Defendants, and each of them, jointly and severally;

Award statutory damages for federal and state claims for Plaintiff against each Defendant in the amount of $54,000.00 ($378,000.00 total).

Award general damages for harm to the Plaintiff's interest in privacy in an amount to be

determined at trial;

Award special damages in the amount to be determined at trial;

Award the cost of this action, including attorney's fees, to Plaintiffs; and

Award access to Web Watcher's permanent records concerning the extent of JOE

ZANG'S illegal use of their software;

Award injunctive relief from further slander and use of the illegally intercepted

communications by JOE ZANG and any of the defendants and such other relief as the

Court may deem just and equitable.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues submitted in this complaint.

Respectfully Submitted,

JAVIER LUIS

Plaintiff